UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JANICE GARDNER, AARON GARDNER,
KENSHAWN FELTON, L.J., *an infant under
the age of 18, by her mother and natural
guardian, Pamela Simpson,*

               Plaintiffs,                                     **OPINION & ORDER**

             - against -                                16-CV-06476 (NG)(ST)

CITY OF NEW YORK, POLICE OFFICER
JARED DELANEY, POLICE OFFICER
MICHAEL YORK, POLICE OFFICER
JULIO RAMOS, POLICE OFFICER JOHN
AND JANE DOE 1–20, SERGEANT EMILE
PRATT, POLICE OFFICER NICHOLAS
SIERRA, SERGEANT BRIAN BEEGAN,
SERGEANT JESSICA GAVARS, POLICE
OFFICER MALOSHAQ "GALE," POLICE
OFFICER MAXIM MALOSHAG,

               Defendants.
-----------------------------------------------------------x

GERSHON, United States District Judge:

      Plaintiff Aaron Gardner brings this action pursuant to 42 U.S.C. § 1983 alleging that

defendants—Police Officers Jared Delaney, Julio Ramos, and Maxim Maloshag of the New York

City Police Department—violated his civil rights when they arrested and prosecuted him.  Plaintiff

brings claims for false arrest, malicious prosecution, malicious abuse of process, denial of the right

to a fair trial, excessive force, and failure to intervene against the individual defendants.[1]

Defendants have moved for summary judgment on each claim.

---

[1] As the case has proceeded, plaintiff Janice Gardner settled her claims, and plaintiffs Kenshawn
Felton and L.J. (an infant under the age of 18, by her mother and guardian Pamela Simpson) were
dismissed from the suit for failure to prosecute.  The § 1983 claims against the City of New York
and all claims against Police Officers John and Jane Doe 1–20, Police Officer Michael York, Police
Officer Nicholas Sierra, Sergeant Emile Pratt, Sergeant Brian Beegan, Sergeant Jessica Gavars,

## I.        Factual Background

Plaintiff's claims arise from the circumstances surrounding his arrest on August 23, 2015 in Von King Park in Brooklyn.  Plaintiff attended a family barbeque that day, along with his sister, Janice Gardner ("Janice"), and cousin, Kenshawn Felton ("Kenshawn").  Although the parties agree on some facts, they dispute the fundamental facts surrounding plaintiff's arrest.

In brief summary, plaintiff's version of events is that he began walking with Janice after she was sexually harassed in the park.  Upon noticing police officers arresting Kenshawn, plaintiff saw Janice approach the officers.  Janice testified that she approached them to explain that Kenshawn was not her assailant, but an officer directed Janice to get away from the area.  Plaintiff then put his arm around Janice to walk to a different area.  As they walked away, plaintiff was pushed in his lower back by the officers, and, after he realized that they were police, plaintiff stood still and attempted to speak with them.  The officers held his arms, punched him, and knocked him to the ground.  Thereafter, he was arrested and taken into custody.

Defendants' version is that they responded to NYPD calls for assistance near Von King Park and observed "chaos," York Dep. at 49:19, including men with stab wounds and a man swinging a piece of wood over his head.  After receiving a report from a complaining victim that Kenshawn had hit him in the head with a cane, the officers arrested Kenshawn.  Janice ran up to the officers placing Kenshawn under arrest, engaged physically with them, and punched Officer Delaney twice in the head.  As the officers attempted to place Janice under arrest, plaintiff approached the officers and by means of physical force attempted to interfere with Janice's arrest.

---

and Police Officer Maloshaq "Gale" were voluntarily dismissed.  At the October 17, 2019 pre-motion conference, plaintiff withdrew claims for conspiracy, defamation, *respondeat superior* liability against the City of New York, and state law claims for malicious prosecution and false arrest.  Later, with permission from the court, plaintiff substituted a federal excessive force claim for his assault and battery claim.

Plaintiff was arraigned on charges of attempted assault, obstructing governmental administration ("OGA"), resisting arrest, and harassment.  Before the trial, the State dropped the OGA and resisting arrest charges.  Plaintiff was acquitted of the remaining counts (harassment and attempted assault) at a bench trial before Judge Dineen Riviezzo of the Kings County Supreme Court.

## II.     Standard of Review

A party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts," *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks omitted), or "rest upon the mere allegations or denials" asserted in the pleadings, *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986).  Instead, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III.    False Arrest

In analyzing a § 1983 false arrest claim, federal courts look to the law of the state in which the arrest occurred.  *See Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir.2013) ("A § 1983 claim for false arrest is substantially the same as a claim for false arrest under New York

law.").  To prevail on a § 1983 claim for false arrest, a plaintiff must show, *inter alia*, that

defendants confined him without consent or justification.  *Jocks v. Tavernier*, 316 F.3d 128, 134–

35 (2d Cir. 2003).

The issue here is whether the arrest was privileged based on the existence of probable cause

for plaintiff's arrest.  *See Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996).[2]  The parties dispute

the factual circumstances surrounding plaintiff's arrest.  Although defendants recognize the factual

dispute with respect to the charges that were presented during trial, they nonetheless argue that, as

a matter of law, probable cause is established because Judge Riviezzo stated in dicta that plaintiff

would have been found guilty of OGA had that charge not been dropped before trial.[3]  Confusingly,

defendants argue claim preclusion in their initial memorandum and issue preclusion in their reply

memorandum.[4]  Neither doctrine applies here.

First, a claim is barred under the doctrine of claim preclusion where: "(1) the previous

action involved an adjudication on the merits; (2) the previous action involved the [same parties]

or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could

have been, raised in the prior action."  *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 285 (2d

---

[2] Plaintiff also asserts that defendants lacked probable cause to arrest Janice.  Because Janice pled guilty to disorderly conduct following her arrest, however, her conviction is "conclusive evidence" of probable cause.  *See, e.g.*, *Timmins v. Toto*, 91 F. App'x. 165, 166 (2d Cir. 2004).  The existence of probable cause for Janice's arrest is not fatal to plaintiff's claim, however, because plaintiff also denies engaging in any behavior that would constitute interference with her arrest.

[3] Judge Riviezzo found it "not credible" that Janice and plaintiff would have walked away while Kenshawn was being arrested; stated that "it was proven beyond a reasonable doubt that Janice Gardner attempted to interfere with her cousin's arrest [and] Mr. Gardner unlawfully and wrongfully interfered with his sister's arrest"; and observed that "the People clearly would have proved beyond a reasonable doubt" that plaintiff was guilty of OGA in the Second Degree.

[4] *Compare* Def. Mem. at 8 ("[T]he doctrine of claim preclusion bars Plaintiff from claiming that he did not interfere with his sister's arrest[.]") *with* Def. Reply at 3 ("Defendants are not arguing claim preclusion, and plaintiff has provided no argument for why issue preclusion does not apply.").  Defendants raised both affirmative defenses in their answer.

Cir. 2000).  Here, however, the issue of probable cause on the OGA charge was not adjudicated on the merits.  That charge was dropped before the trial, and plaintiff defended himself only on charges of attempted assault and harassment, which were decided in his favor.  In addition, defendants were not in privity with the State during the criminal proceeding.  *See Jenkins v. City of New York*, 478 F.3d 76, 85 (2d Cir. 2007).

Second, issue preclusion, or collateral estoppel, requires that: (1) "the identical issue necessarily must have been decided in the prior action and be decisive of the present action," and (2) "the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination."  *Jenkins*, 478 F.3d at 85 (quotation omitted).  However, the only issues necessarily decided at trial—whether plaintiff was guilty of attempted assault and harassment—were resolved in his favor.  And, even had OGA been addressed, plaintiff would not have been given a "full and fair opportunity" to litigate it because the charge was dropped before trial.  Moreover, even if the state court had stated that probable cause existed to arrest plaintiff, he could not have appealed that dicta because he was acquitted on all charges.  *See Johnson v. Watkins*, 101 F.3d 792, 793 (2d Cir. 1996).

Finally, defendants argue that they should be granted qualified immunity because Judge Riviezzo's opinion in dicta demonstrates that a reasonable officer could have reached the same conclusion as the officers in this case.  "In a false arrest case, an arresting officer [is] entitled to qualified immunity from a suit for damages if he can establish that there was arguable probable cause to arrest."  *Guerrero v. Scarazzini*, 274 F. App'x. 11, 12 (2d Cir. 2008).  "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  *Id.*  Judge Riviezzo found that plaintiff would have been convicted of OGA because

5

it was "simply not credible" that he and Janice would have "calmly walked away" while their cousin was being arrested, Ex. O at 368, but "the credibility of witnesses is not to be assessed by the court on a motion for summary judgment." *Anderson v. City of New York*, 817 F. Supp. 2d 77, 89 (E.D.N.Y. 2011). Defendants also offer no support for the premise underlying their argument— that the existence of Judge Riviezzo's credibility determination precludes a federal jury from making a different determination at trial. Because the facts surrounding the arrest are "sharply disputed," the court has no basis to resolve the issue of the officers' qualified immunity as a matter of law. *Weyant*, 101 F.3d at 858. In sum, because the issue of probable cause is disputed and defendants are not entitled to qualified immunity, defendants' motion for summary judgment on plaintiff's false arrest claim is denied.

## IV. Malicious Prosecution

To prevail on a claim of malicious prosecution, a plaintiff must show that (1) the defendant initiated a prosecution against the plaintiff; (2) the defendant lacked probable cause to believe the proceeding could succeed; (3) the defendant acted with malice; (4) the prosecution was terminated in the plaintiff's favor; and (5) there was a post-arraignment deprivation of liberty. *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). For purposes of their summary judgment motion, defendants challenge the fourth and fifth elements. They argue that plaintiff cannot establish that the termination of his criminal proceedings affirmatively indicated his innocence or that there was a post-arraignment deprivation of liberty. Neither argument is persuasive.

First, within the Second Circuit, "a plaintiff asserting a malicious prosecution claim under § 1983 must [ ] show that the underlying criminal proceeding ended in a manner that affirmatively indicates his innocence." *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018). The

standard articulated in *Lanning* requires that "the prosecution terminated in some manner indicating that the person was not guilty of the offense charged," based on the merits of the case, as opposed to "any number of procedural or jurisdictional grounds." *Id.* at 26, 28 (quotation omitted). The prosecution in this case resulted in an acquittal: "the most obvious example of a favorable termination." *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995); *see also Black v. Petitinato*, 761 F. App'x 18, 23 (2d Cir. 2019) ("Where the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused, for these purposes, only when its final disposition is such as to indicate the innocence of the accused.") That Judge Riviezzo stated, in dicta, that plaintiff would have been found guilty of a separate offense that was never argued before her does not negate the acquittal for purposes of the malicious prosecution claim.[5]

Indeed, "courts have held that an acquittal satisfies the favorable termination requirement even when there has been a conviction on a related charge, or one arising from the same incident or event." *Janetka v. Dabe*, 892 F.2d 187, 190 (2d Cir. 1989). In *Ostroski v. Town of Southold*, the Honorable Joseph F. Bianco, then District, now Circuit Judge, declined to read *Janetka* narrowly. 443 F. Supp. 2d 325, 336 (E.D.N.Y. 2006). The plaintiff in *Ostroski*, who was acquitted on an OGA charge but convicted of harassment and criminal mischief, was permitted to bring a malicious prosecution claim on the basis that the charges had differing elements. *Id.* at 337–38.

Second, "a post-arraignment defendant who is 'obligated to appear in court in connection with [criminal] charges whenever his attendance [i]s required' suffers a Fourth Amendment

---

[5] Indeed, "courts have held that an acquittal satisfies the favorable termination requirement even when there has been a conviction on a related charge, or one arising from the same incident or event." *Janetka v. Dabe*, 892 F.2d 187, 190 (2d Cir. 1989). In *Ostroski v. Town of Southold*, the Honorable Joseph F. Bianco, then District, now Circuit Judge, declined to read *Janetka* narrowly. 443 F. Supp. 2d 325, 336 (E.D.N.Y. 2006). The plaintiff in *Ostroski*, who was acquitted on an OGA charge but convicted of harassment and criminal mischief, was permitted to bring a malicious prosecution claim on the basis that the charges had differing elements. *Id.* at 337–38.

deprivation of liberty." *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013).  Plaintiff attended several court appearances in connection with his trial.  Defendants contend that plaintiff did not experience a separate deprivation for the attempted assault and harassment prosecution because "[t]hose charges would have been subsumed by a trial for the higher level [OGA] offense, which the DA was entitled to bring, though chose not to, and which the Judge ruled had been proven." Def. Mem. at 12.

This argument is meritless.  While it is correct that an independent deprivation of liberty must be shown, *see Coleman v. City of New York*, 688 F. App'x 56, 58 (2d Cir. 2017), here, in contrast to *Coleman*, defendants have not established that plaintiff, in the absence of his attempted assault and harassment charges, would have been required to attend court appearances for a separate charge which was supported by probable cause.  The OGA charge was dropped before trial, and as explained above, there is an issue of fact as to whether probable cause existed to arrest him for OGA or any other charge.

## V.      Malicious Abuse of Process

Defendants contend that no reasonable factfinder could determine that plaintiff's arrest and prosecution was motivated by anything other than the officers' good faith belief that they had probable cause for the arrest.  Because plaintiff did not address this argument in his opposition brief, he has abandoned this claim, and defendants are entitled to summary judgment on it.  *See, e.g., Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003).  Dismissal on the basis of abandonment is particularly appropriate where, as here, plaintiff has merely alleged in his complaint, but has not identified any evidence that suggests, that defendants "aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution."  *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003).

**VI.     Denial of the Right to a Fair Trial**[6]

To establish a violation of the right to a fair trial based on fabrication of evidence, a plaintiff must demonstrate that "an (1) investigating official (2) fabricat[ed] information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Ganek v. Leibowitz*, 874 F.3d 73, 90 (2d Cir. 2017) (citation omitted). Defendants argue that this claim must be dismissed because the criminal proceedings against plaintiff did not terminate in his favor, and the alleged fabrication by the officers—that plaintiff was the aggressor—was not material to the case. They also argue that none of the 28 facts identified by plaintiff in his opposition brief as allegedly fabricated by defendants should be considered in the context of this claim. I disagree.

First, defendants' favorable termination argument is derived from *McDonough v. Smith*, a recent Supreme Court case, addressing the accrual date for § 1983 fair trial claims based upon fabricated evidence. 588 U.S. ___, 139 S. Ct. 2149, 2156 (2019). It held that such a claim does not accrue until the "the underlying criminal proceedings have resolved in the plaintiff's favor." *Id*. In *McDonough*, the Supreme Court observed that the "most analogous common-law tort" to a fair trial claim is malicious prosecution, and, because the plaintiff's acquittal was "unquestionably a favorable termination," the Court left open the question of the "broader range of ways a criminal prosecution (as opposed to a conviction) might end favorably to the accused." *Id*. at 2156, 2160 n.10. Recently, the Second Circuit found that "*McDonough*'s accrual rule does not import malicious prosecution's favorable-termination requirement onto section 1983 fair-trial claims."

---

[6] Plaintiff styles the fifth count of his complaint "Due Process / Denial of Constitutional Right to Fair Trial." Because plaintiff does not present any argument for a due process violation separate from the denial of the right to a fair trial in his opposition papers, I assume that this claim relates solely to the right to a fair trial.

*Smalls v. Collins*, 2021 WL 3700194, at \*13 (2d Cir. Aug. 20, 2021). Rather, "all that is required is that the underlying criminal proceeding be terminated in such a manner that the lawsuit does not impugn an *ongoing* prosecution or *outstanding* conviction." *Id.* (emphasis in original). Plaintiffs whose criminal convictions have been invalidated or whose prosecutions have been terminated in their favor satisfy this requirement "because, in such circumstances, there is no risk that a section 1983 plaintiff's claim will impugn an existing conviction or the basis for an ongoing prosecution." *Id.* The Court reasoned that, unlike a malicious prosecution claim, which is grounded in the Fourth Amendment, a § 1983 fair trial claim "focuses on the constitutionality of the process" in addressing the "deprivation of life, liberty, or property due to corruption of due process by official misconduct." *Id.* at \*12.

Here, plaintiff was acquitted of the charges brought to trial. Similar to the plaintiffs-appellants in *Smalls* and *Daniel*, whose "criminal proceedings terminated without an extant criminal conviction or any remaining pending charges," *id.* at \*1, plaintiff has no outstanding criminal judgment, and his lawsuit does not impugn any ongoing prosecution or existing conviction. Thus, his underlying criminal proceeding terminated in his favor, his fair trial claim has accrued, and it is triable.

Second, defendants misconstrue the materiality of the alleged fabrication through an overly narrow interpretation of the claim. Plaintiff alleges that defendants "manufactur[ed] false evidence through their account that Plaintiff was the aggressor." Am. Compl. ¶ 54. Defendants argue that, because the criminal complaint does not describe plaintiff as an aggressor, and neither of the two charges brought to trial—attempted assault in the third degree and harassment—requires that the accused was the first to act, any alleged fabrication that plaintiff was "the aggressor" is immaterial. According to defendants, the only possible interpretation of the alleged fabrication is that plaintiff

10

was the initial aggressor, and such evidence is material only if being the first to act is an element of the crime. However, defendants offer no support for not considering fabrications material if they are relevant to the crime charged, and not just an element of the crime itself. Because aggressive conduct is relevant to both charges, fabricated evidence concerning such conduct likely would influence a jury's decision.

Finally, defendants argue that the 28 facts plaintiff identifies in his opposition brief as alleged fabrications should be disregarded because they were offered for the first time during motion practice and they are not material. But the facts raised in plaintiff's opposition do not introduce new claims or contradict any of his previous statements, and they are drawn directly from the criminal complaint and defendants' depositions. Any facts that constitute defendants' accounts of plaintiff's aggression, for example the facts allegedly fabricated by defendant Ramos numbered 1–8 and 10–13 and defendant Maloshag numbered 4–10 are clearly relevant and will be considered. Pl. Opp. 5–7. The materiality of the other facts will be addressed by the court during final pre-trial proceedings.

## VII.   Excessive Force and Failure to Intervene Claims[7]

Defendants argue that plaintiff's excessive force claim should be dismissed because it is refuted by contemporaneous medical records. If the claim is not dismissed entirely, they contend that it should be dismissed against Officer Delaney, whose personal involvement has not been established. Defendants also assert that plaintiff's failure to intervene claim should be dismissed

---

[7] I address plaintiff's excessive force and failure to intervene claims together because a "police officer is personally involved in the use of excessive force if he either: (1) directly participates in an assault; or (2) was present during the assault, yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so." *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003) (citation omitted), *aff'd sub nom. Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005).

because there was nothing unconstitutional in which to intervene, and, even if there were, there was no time for an officer to intervene.  As described below, questions of fact preclude summary judgment on these claims.  Among other facts, the parties dispute the events leading up to the use of force, the level of force used, the extent, if any, to which plaintiff resisted arrest, and whether the incident lasted long enough to allow any defendant time to intervene.

### A.  Excessive Force

To succeed on a Fourth Amendment excessive force claim, a plaintiff must demonstrate that the actions of the arresting officers were not "'objectively reasonable' in light of the facts and circumstances as presented to [the officers] at the time of the [p]laintiff's arrest."  *Graham v. Connor*, 490 U.S. 386, 397 (1989) (citation omitted).  The reasonableness of the officers' actions is a fact-intensive inquiry, and summary judgment on an excessive force claim is inappropriate when material facts as to reasonableness are in dispute.  *Kerman v. City of New York*, 261 F.3d 229, 240 (2d Cir. 2001).  Although the force used "must generally be more than *de minimis* for a claim to be actionable," *Antic v. City of New York*, 273 F. Supp. 3d 445, 458 (S.D.N.Y. 2017), *aff'd*, 740 F. App'x 203 (2d Cir. 2018), an injury need not be severe or permanent to maintain a claim that the force used was objectively unreasonable.  *See*, *e.g.*, *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004).

The facts surrounding the reasonableness of the officers' actions here are in dispute.  Sworn deposition testimony from plaintiff and Janice contradict testimony from Officer Ramos that he and Officer Maloshag each struck plaintiff once.  Plaintiff testified that he was walking away from the police officers, in accordance with their orders, when he was pushed by the officers; he turned around and was struck several times in the head by the officers and later slammed on the ground.  During this time, he asserts that he was merely speaking with the officers to determine the cause

of the arrest.  Whether the officers struck plaintiff once or several times, the reasonableness of the use of force is in dispute if plaintiff's version of events is credited.

Moreover, contrary to defendants' arguments, the medical records do not "completely refute" plaintiff's version of events.  An EMT was dispatched to treat plaintiff at the precinct for an injury pursuant to a fight or brawl, and, although plaintiff said, "I'm OK," he also stated that he was punched multiple times and the EMT recorded signs of bleeding.  Ex. K at 1–2.  At the emergency room the day after plaintiff's release, he reported symptoms of back and neck pain, his skin showed signs of color change and wound with multiple abrasions to his face and hands, and he received a diagnosis of assault by bodily force by multiple persons unknown to the victim and a headache.  Ex. L at 4–5, 9.  Plaintiff also submitted a photograph that shows a laceration above his eye.  Ex. 3.  This is therefore not a case in which the evidence conclusively show that plaintiff's injuries were *de minimis* or that the force used was reasonable.

Because there is a genuine dispute as to the material facts concerning the use of force, defendants are not entitled to summary judgment on this claim.

### B.  Personal Involvement of Officer Delaney

In the alternative, defendants argue that the excessive force claim should be dismissed as against Officer Delaney because his personal involvement cannot be established.  Although it is "axiomatic that claims under § 1983 for use of excessive force or failure to intervene require personal involvement to trigger liability," *Demosthene v. City of New York,* 2020 WL 5988518, at *4 (2d Cir. Oct. 9, 2020), on summary judgment, a plaintiff need not identify who among several defendants used unreasonable force and who failed to intervene.  *John v. City of New York*, 406 F. Supp. 3d 240, 245 (E.D.N.Y. 2017).  Rather, to establish liability, a plaintiff must establish that an officer had "a realistic opportunity to intervene to prevent the harm from occurring." *Anderson v.*

*Branen*, 17 F.3d 552, 557 (2d Cir. 1994); *see also, e.g.*, *Ricks v. O'Hanlon*, 2010 WL 245550, at

*4 (S.D.N.Y. Jan. 19, 2010) (finding sufficient evidence of an officer's personal involvement to

survive summary judgment on excessive force claim, despite plaintiff inability to identify who

assaulted him, where the officer was present during the attack and had a realistic opportunity to

intervene).  Whether an officer was capable of preventing the harm and had sufficient time to

intercede "is an issue of fact for the jury unless, considering all the evidence, a reasonable jury

could not possibly conclude otherwise." *Branen*, 17 F.3d at 557.

Testimony from Officers Ramos and Delaney, as well as Janice's criminal court complaint,

acknowledge that Officer Delaney was present at the scene and ordered Janice to disperse.

Defendants do not dispute that he was present and in the vicinity of Janice and plaintiff around the

time of their arrests.  Plaintiff also testified that several officers were involved in the attack, and,

under his version of the facts, he would have been prevented from seeing each officer involved, as

at least one was behind him holding his arms while the others struck his face. *See De Michele v.

City of New York*, 2012 WL 4354763, at *16–17 (S.D.N.Y. Sept. 24, 2012) (denying summary

judgment on excessive force claim where it was undisputed that officers were present, even though

plaintiff was prevented from seeing which officers took what actions).  Thus, plaintiff has put forth

sufficient evidence to create a genuine issue of material fact as to whether Officer Delaney was

present during or participated in the alleged unlawful conduct.

## C.  Failure to Intervene

Finally, defendants assert that the failure to intervene claim should be dismissed because

there was nothing unconstitutional in which to intervene, and, even if there were, there was no

time for an officer to intervene.  The first argument fails in light of the unresolved factual disputes

14

on the excessive force claim.  The second argument fails because there is a factual dispute as to the length of time the alleged excessive force was used.

"Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Anderson*, 17 F.3d at 557.  Contrary to defendants' arguments, the undisputed evidence does not show that the alleged conduct happened in a matter of seconds.  Although Officer Maloshag stated that plaintiff's apprehension happened "very quickly," Maloshag Dep. at 115:20–21, Officer Ramos testified that it took "maybe a minute or so, maybe longer" to place him into handcuffs.   Ramos Dep. at 119:7.  Plaintiff testified that, although he did not know how long the incident lasted, he was trying to explain to the officers that he worked for the City and asked them questions as they struck him.  Pl. Dep. at 97:6–9.  This dialogue would suggest a timeline closer to a minute or longer, as Officer Ramos testified.  Plaintiff also testified that, after striking him, the officers slammed him on the ground and kneed him in the head and back.  *Id.* at 107:2–109:19.  Whether any defendant had an opportunity to intervene therefore depends on whose testimony is credited, particularly if the blows plaintiff sustained while standing are viewed as a separate incident of abuse from those he experienced after being slammed to the ground.  *See, e.g.*, *Figueroa v. Mazza*, 825 F.3d 89, 106–07 (2d Cir. 2016) (district court erred in concluding that defendants did not have sufficient time to intercede where assault could have consisted of anywhere from five to twelve punches and could have lasted from twenty seconds to two minutes); *Gonzalez*, 199 F. Supp. 3d at 623 ("When a victim is subject to multiple incidents of abuse, however, the likelihood that an officer would be able to intervene is greater.").

Finally, it is true, as defendants argue, that, where particular defendants are the direct participants in the allegedly excessive use of force, "the failure to intervene theory of liability is

inapplicable." *Arminio v. Holder*, 2019 WL 176804, at *5 (S.D.N.Y. Jan. 11, 2019).  However, although the evidence places each defendant at the scene of the incident, plaintiff does not specify which defendants allegedly struck him and which were present but failed to intervene. Whether the particular defendants are liable for use of excessive force, failure to intervene, or none of the above are triable questions of fact for the jury.

## VIII.   Conclusion

For the foregoing reasons, the motion for summary judgment is granted as to plaintiff's malicious abuse of process claim on the grounds of abandonment. The motion for summary judgment is otherwise denied.  With respect to the 28 facts plaintiff identifies in his fair trial claim, those that constitute defendants' accounts of plaintiff's aggression will be considered;   the materiality of the other facts will be addressed by the court during final pre-trial proceedings.

**SO ORDERED.**

    /s/

**NINA GERSHON**
**United States District Judge**

August 27, 2021
Brooklyn, New York